**Edward H. Trompke**, OSB #843653
ed.trompke@jordanramis.com
**Christopher K. Dolan**, OSB #922821
chris.dolan@jordanramis.com
JORDAN RAMIS PC
Two Centerpointe Dr., 6th Floor
Lake Oswego, Oregon 97035
Telephone: (503) 598-7070
Facsimile: (503) 598-7373

Attorneys for Plaintiffs Oregon Moms Union; Melissa Adams; Spud Monkey's Inc., an assumed business name of Water Hole No. 2 Saloon, Inc.; and Heart of Main Street

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| OREGON MOMS UNION, an Oregon political action committee; MELISSA ADAMS, an individual; SPUD MONKEY'S, INC., an assumed business name of WATER HOLE NO. 2 SALOON, INC., an Oregon corporation; and HEART OF MAIN STREET, an Oregon political action committee,<br><br>    Plaintiffs,<br><br>    v.<br><br>KATHERINE "KATE" BROWN, in her official capacity as the Governor of the State of Oregon,<br><br>    Defendant. | Case No. 3:21-cv-00678-JR<br><br>PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER<br><br>EXPEDITED CONSIDERATION REQUESTED<br><br>REQUEST FOR ORAL ARGUMENT |

**LOCAL RULE 7.1 CERTIFICATION**

Pursuant to L.R. 7-1(a)(1), conferral on this motion with Defendant is not required.

**RULE 65 - CONFERRAL**

The undersigned attorney Edward Trompke certifies that on May 4, 2021 and May 5, 2021, he conferred with the office of the Oregon Attorney General that Plaintiffs would be seeking issuance of a temporary restraining order enjoining Executive Order 21-06 and Executive 21-10.

**MOTION**

Pursuant to Fed. R. Civ P. 65, Plaintiffs move for issuance of a temporary restraining order, together with an order requiring defendant to show cause why a preliminary injunction should not be issued. This motion is supported by the Declarations of defendant Melissa Adams, MacKensey Pulliam, Dean Hurford, and attorney Edward Trompke, the records and files herein, and the points and authorities which follow.

**POINTS AND AUTHORITIES**

**Factual Background**

This proceeding pertains to the validity of Governor Brown's March 12, 2021, Executive Order 21-06 and her April 29, 2021, Executive Order 21-10, both issued in response to the COVID-19 pandemic.

1. **Executive Order ("EO") 21-06 and Public Schools.**

EO 21-06 is an executive order pertaining to the reopening of Oregon's K through 12 public school system. In that executive order, defendant makes a number of pertinent findings which, as discussed below, are at odds with her decision to allow for a "hybrid instructional model," to wit:

> The pandemic has had an immense and disruptive impact on
> Oregon's Children. In the early days of the pandemic in Oregon,
> in order to control the spread and impact of COVID-19, I ordered a

Page 2 –   PLAINTIFFS' MOTION FOR TEMPORARY
          RESTRAINING ORDER

>*temporary, emergency shift* to continue on-line instruction for K-12 students for the end of the 2019-2020 school year.
>
>* * *
>
>Comprehensive distance learning *was a tool deployed to manage a crisis in a year no-one could have imagined.  This emergency tool was never intended to be a permanent, or preferred, solution for educating the vast majority of Oregon's Children.  In person instruction is the norm for education in Oregon and round world.  It is the model we know best serves the vast majority of students.  In-person instruction serves not only student's needs for learning critical knowledge and skills, but also their needs for peer interaction, mental health supports, nutritional supports, and care and connection in supporting the well-being and resilience of students and their families*.
>
>* * *
>
>* * * (P)ublic schools continue to adhere to the strict health and safety protocols under Oregon's mandatory *Ready Schools; Safe Learners* guidance.  ***Oregon is ready.***
>
>* * *
>
>***<u>The science and data are clear:  schools can return to in-person instruction with very low risk of COVID-19 transmission where, as here, strict health and safety guidelines are in lance, and particularly with a vaccinated work force</u>***.

(Emphasis added.)

Defendant refers to in-person instruction as the "norm."  It is, indeed, the law.  ORS 339.010(1) provides:  "Except has provided in ORS 339.030, all children between the ages of 6 and 18 years who have not completed the 12th grade are required to attend regularly a public full-time school during the entire school term."  ORS 339.020(1) likewise provides:  "Except as provided in ORS 339.030, every person having control of a child between the ages of 6 and 18 years has not completed the 12th grade is required ***to send the child to,*** and maintain the child in, regular attendance at a public full-time school during the entire school term."  (Emphasis added.)

Page 3 –     PLAINTIFFS' MOTION FOR TEMPORARY
             RESTRAINING ORDER

Plaintiffs do not dispute that Defendant, acting in her capacity as Governor of the state of Oregon, is vested with certain emergency powers, and that her prior order providing for a "temporary, emergency shift to continue on-line instruction for K-12 students for the end of the 2019-2020 school year" *at the time it was issued* in early 2020, was likely lawful. That is not true now.

ORS 401.025 defines "emergency" as a "human created or natural event or circumstance that causes or threatens *widespread loss of life, injury to person* or property, human suffering or financial loss(.)" (Emphasis added.) ORS 401.168 limits defendant's "complete authority" over executive agencies of the state of Oregon to a "state of *emergency* (.)" Here, there is no emergency. Defendant has confirmed within EO 21-06 that there is no emergency, finding specifically: "The science and data are clear: schools can return to in-person instruction with very low risk of COVID-19 transmission." This is an admission of her lack of emergency authority.

Notwithstanding this, EO 21-06 further and inexplicably provides:

**2.  Definitions.**

> \* \* \*
>
>> e.  *"Hybrid instructional model"* includes any instructional model that is not fully on-site and in-person (with all students attending on-site every day)(.)
>
> \* \* \*
>
> 3.  <u>In-person classroom instruction</u>.
>
>> a.  Not later than the week of March 29, 2021 for grades K-5, and the week of April 19, 2021 for grades 6-12, all public schools in Oregon shall be in operation to deliver educational services through either a hybrid instructional model or an on-site

Page 4 –   PLAINTIFFS' MOTION FOR TEMPORARY
              RESTRAINING ORDER

>  instructional model.  After those dates, it will no
>  longer be an option for public schools to exclusively
>  offer a comprehensive distance learning
>  instructional model.

By allowing for a hybrid instructional model, where there is no emergency, Defendant has disregarded ORS 339.010 and ORS 339.020's requirement for in-person school instruction.

Article I section 22, Oregon Constitution prohibits the Governor from suspending the laws of the state, without legislative authority to do so, and given that no emergency exists, the Governor lacks authority to suspend or waive compliance with the duly enacted education laws of the state. ("**Section 22. Suspension of operation of laws.** The operation of the laws shall never be suspended, except by the Authority of the Legislative Assembly.")

### 3.    Executive Order 21-10 and Private Businesses.

On March 8, 2020, Defendant issued Executive Order 20-03 ("EO 20-03"), declaring a statewide state of emergency in response to the COVID-19 ("COVID") outbreak in Oregon.

In pertinent part, EO 20-03 provided::

> 1.   The Oregon Health Authority and the state Public Health
>      Director shall take all actions necessary and authorized
>      under ORS 401.651 to 401.670, ORS 433.443, and ORS
>      431A.015 to respond to, control, mitigate, and recover from
>      the emergency, including but not limited to:
>
> \* \* \*
>
> (d)  Issuing guidelines for private businesses
>      regarding appropriate work restrictions, if
>      necessary.

Defendant has subsequently extended EO 20-03 six times.

On April 29. 2021, Defendant issued Executive Order 21-10, extending EO 20-03 for the seventh time for a period of an additional sixty (60) days.

Page 5 –    PLAINTIFFS' MOTION FOR TEMPORARY
            RESTRAINING ORDER

On April 27, 2021, Defendant announced updates to the Oregon County COVID risk levels under the state's public health framework. As part of that update, Defendant placed no less than fifteen (15) Oregon counties in the "Extreme Risk" category, including, but not limited to Multnomah County and Clackamas County.

On April 28, 2021, the Oregon Health Authority issued guidelines ("Guidelines") pertaining to eating and dining establishments operating within counties placed in the "Extreme Risk." The Guidelines expressly prohibit indoor dining of any kind.

The Guidelines allow businesses other than eating and dining establishments, regardless of whether such businesses operate within a County designated an "Extreme Risk" County, to operate indoors in some capacity.

As it pertains to certain of those businesses owned and operated by Plaintiffs Adams and Spud Monkey's, and those businesses that Heart of Main Street works on behalf of in the state of Oregon, *i.e.,* food and drink establishments, EO 21-10 completely removes any possibility of conducting a substantial portion of any typical bar or restaurant operation, namely the ability of such establishments to permit their patrons to enjoy food or drink on site in an indoor seating setting.

Since Defendant issued EO 20-03 in March of 2020, effective vaccinations against COVID infections have been developed and widely deployed throughout the state of Oregon. On April 19, 2021, the COVID vaccines were made available, free of charge, to all Oregonians age 16 and over, after being made available to educators and older residents months earlier.

Individuals who have been vaccinated are at an extremely low risk of COVID; only a small fraction of one-percent become infected, and an even smaller number become symptomatic and able to spread COVID. The United States Centers for Disease Control and Prevention of the

Department of Health and Human Services ("CDC") is the national public health agency of the United States, charged with protecting human life. The CDC has issued a factual analysis of the numbers of persons who have been vaccinated against COVID infections, and who have still become infected. As of April 26, 2021, over 95,000,000 Americans were vaccinated. Of that number, only 9,245 cases of COVID were reported among the 95,000,000 vaccinated people. That is fewer than 0.01 percent (1/100th of one percent). *See,* Exhibit 6 *to Trompke Declaration*. Of that number, only 137 died (not all of COVID) a rate of 1.48% of the infected, or 0.0000014% of the vaccinated people. *Id*. While every life is important, this is an insignificant risk to the population. On April 27, 2021, the CDC released updated guidelines (the "CDC Guidelines") that distinguish between vaccinated and unvaccinated persons, because the two classes present very different risks of COVID infection and spread, and because they present very different risks to the public and very different burdens on public resources. *See,* Exhibit 4 *to Trompke Declaration*. The CDC has found that fully vaccinated people may, at its "safest" rating, eat at indoor restaurants and drink at indoor bars, while wearing a mask when not eating or drinking (that is, when entering or exiting).

Approximately one-third of Oregonians have been fully vaccinated, and nearly one-half have received the first of two injections. As a result, at least one-third, and nearly one-half of Oregon's population is not likely to contract or spread COVID.

EO 21-10 fails to differentiate between vaccinated and unvaccinated persons, subjecting all to the same regulations and deprivations of liberty. There is no rational reason to subject vaccinated persons to deprivations of liberty, especially by executive order.

Plaintiffs and the businesses they represent have spent substantial sums to construct, build, and create indoor safety dividers and other safety precautions and protections. Such costs

were incurred in reliance on previous executive orders of the Governor, and guidance of the state of Oregon, and CDC guidance, which executive orders and guidance were rationally based on medical and scientific facts. EO 21-10 lacks such rational basis in scientific and medical facts differentiating the categories or classes of (a) customers, vaccinated and unvaccinated, and (b) eating and drinking establishments that are prohibited from operating in an indoor setting, from those businesses that are allowed to continue to operate in an indoors setting.

### Standard for Issuance of a Temporary Restraining Order

In order to obtain a temporary restraining order ("TRO"), Plaintiffs must demonstrate (1) they are likely to succeed on the merits, (2) that they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities weighs in Plaintiffs' favor, and (4) it is in the public's best interest that a TRO (and preliminary injunction) be issued. *Winter v. Natural Res. Def. Council*, 129 S.Ct. 365, 374 (2008). When the government is a party, the last two factors of the injunction analysis merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014); *Index Newspapers LLC v. City of Portland,* -- F.Supp. 3d --, 2020 WL 4883017, at *26 (D. Or., Aug. 20, 2020, Simon, J.).

Further addressing this standard, the Ninth Circuit, in *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-35 (9th Cir. 2011), stated:

> The majority opinion in *Winter* did not, however, explicitly discuss the continuing validity of the "sliding scale" approach to preliminary injunctions employed by this circuit and others. Under this approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another. For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits. * * * This circuit has adopted and applied a version of the sliding scale approach under which a preliminary injunction could issue where the likelihood of success is such that "serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor." * * *

Page 8 –     PLAINTIFFS' MOTION FOR TEMPORARY
             RESTRAINING ORDER

> That test was described in this circuit as one alternative on a continuum. * * * The test at issue here has often been referred to as the "serious questions" test.
>
> * * *
>
> For the reasons identified by our sister circuits and our district courts, we join the Seventh and the Second Circuits in concluding that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after the Supreme Court's decision in *Winter*. In this circuit, the test has been formulated as follows:
>
>> A preliminary injunction is appropriate when a plaintiff demonstrates ... that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor.
>
> * * * Of course, plaintiffs must also satisfy the other *Winter* factors.

(Citations omitted.)

### 4. Plaintiffs are likely to succeed on the merits.

"There is some uncertainty as to the exact degree of likely success that stay petitioners must show, due principally to the fact that courts routinely use different formulations to describe this element of the stay test." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011). The *Leiva-Perez* Court added:

> There are many ways to articulate the minimum quantum of likely success necessary to justify a stay—be it a "reasonable probability" or "fair prospect," * * *; "a substantial case on the merits," * ** or, * * * that "serious legal questions are raised." We think these formulations are essentially interchangeable, and that none of them demand a showing that success is more likely than not. Regardless of how one expresses the requirement, the idea is that in order to justify a stay, a petitioner must show, at a minimum, that she has a substantial case for relief on the merits.

*Id.* at 967-68. (Citations omitted.)

/ / /

Page 9 –   PLAINTIFFS' MOTION FOR TEMPORARY
          RESTRAINING ORDER

### a. Equal Protection and Due Process.

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const., amend XIV, art. I.

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Sunday Lake Iron Co. v. Wakefield to.*, 247 U.S. 350, 352 (1918). The U.S. Constitution requires, "essentially * * * that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985), *superseded by statute other grounds as explained in Rios v. Paramo*, 2016 WL 8731085, *41 (S.D. Cal. July 15, 2016). The *Cleburne* court further confirmed, however, that "(t)he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Id*. at 440.

In the instant case, not only are the children's education impacted by their unequal and differential deprivation of in-person education depending on what school district they happen to live in, but they are impacted by the lack of a rational basis depending on the vaccinated status of their teachers. Plaintiff Oregon Moms Union represents the interests the parents of K through 12 public school children in Oregon. *MacKensey Dec*., ¶2. The parents seek full-time in-person, in-school instruction for their children. *Id.* at ¶4. They assert and know that, based on their experience in raising their children, in-person education is more effective in the public schools

Page 10 –  PLAINTIFFS' MOTION FOR TEMPORARY
            RESTRAINING ORDER

than remote learning.  *Id.* at ¶6.

The rights of the children's parents to direct their education is also unequally impacted by what district they happen to live in and whether the schools in their district is on a full in-person or hybrid education status.

There is no emergency in the schools and no authority of the Governor to suspend the laws for some districts and some students but not others, nor to choose not to apply the laws equally to all districts and students without due process.

As to the business Plaintiffs, not only have Oregon's restaurants and taverns been unequally singled out by the Governor, there is no rational basis to have done so.  EO 21-10 arbitrarily places crippling restrictions on Oregon's various restaurants and taverns that it does not place on other similarly situated commercial enterprises and completely removes any possibility of conducting a substantial portion of any typical bar or restaurant operation, namely the ability of such establishments to permit their patrons to enjoy food or drink on site, whether in indoor seating.

There has been no apparent attempt by Defendant to articulate why this discrepancy in treatment is warranted toward Plaintiffs or those whom Plaintiffs represent.  This is particularly striking when public reports indicate there appears to be no real data to show that Oregon restaurants and bars pose any greater risk than any other business in Oregon.[1]  Dr. Sidelinger's

---

[1] *See*, testimony of Dr. Dean Sidelinger, Oregon State Epidemiologist, to the Oregon Senate Health Care Committee, at 32:36 "*restaurants and bars just in the new outbreaks we've seen has been about 3% of the outbreaks in the last week."* Available at https://olis.oregonlegislature.gov/liz/mediaplayer?clientID=4879615486&eventID=2021041334 Significantly, nowhere did Dr. Sidelinger consider the differences in risk between vaccinated and unvaccinated people.  *See also Is indoor dining safe?  Oregon's data can't say*, August 6, 2020, available at https://www.opb.org/article/2020/08/07/bar-restaurant-coronavirus-safe-oregon/ (last visited November 19, 2020) ("In our data, there is no clear evidence of significant transmission in bars or restaurants," Oregon state epidemiologist Dean Sidelinger said to members of the

Page 11 –   PLAINTIFFS' MOTION FOR TEMPORARY
             RESTRAINING ORDER

testimony, referred to in the prior foot note, did not consider the differences in risk in vaccinated and unvaccinated persons, and made no conclusion that vaccination status gives rise to different safety levels when engaging in public activities.  And just as significantly, Dr. Sidelinger stated that only 3% of COVID cases can be linked to eating and dining establishments in Oregon.

In addition, EO 21-10 is not rationally based in facts because it permits activities to take place in ordinary residential homes that would be and now are barred in better ventilated commercial structures like restaurants at the risk of criminal penalty to a restaurateur who "knowingly" violates the Order.  Restaurants are subject to commercial building code standards in Oregon and must provide adequate ventilation for safe and sanitary airflow.  It is not rationally based on the evidence to restrict, as EO 21-10 does, eating and dining establishments to outdoor dining or take-out only while permitting up to 6 persons of two different households to gather in homes that are not subject to the stricter and safer mask-wearing (while not eating) and ventilation guidelines under which restaurants operate.

There is no rational basis for the restrictions in EO 21-10 that bar completely all indoor dining on site at food or drink establishments.

      **b.**      **Improper Delegation.**

Plaintiffs are also likely to succeed on the merits of their Delegation claim.  As recently recognized by the Oregon Supreme Court, "the Governor's emergency powers under ORS chapter 401 are limited by the state and federal constitutions.  Therefore, although the state's

---

media in July when a reporter asked if it was safe to keep bars open.). *See also Id.* (So have barkeeps, servers and their patrons in Oregon figured out how to safely gather indoors? Or is there a different reason Oregon health officials aren't seeing transmission in bars and restaurants?
"The fact is, we aren't really quantifying it," said Ann Thomas, a senior health advisor at the Oregon Health Authority.).

Page 12 –   PLAINTIFFS' MOTION FOR TEMPORARY
              RESTRAINING ORDER

police powers include the power to impose reasonable public safety regulations, courts may intervene if the regulations exceed constitutional limits." *Elkhorn Baptist Church v. Brown*, 366 Or 506, 526 (2020). As *Elkhorn* recognizes while citing the United States Supreme Court:

> We say necessities of the case, because it might be that an acknowledged power of a local community to protect itself against an epidemic threatening the safety of all might be exercised in particular circumstances and in reference to particular persons in such an arbitrary, unreasonable manner, or might go so far beyond what was reasonably required for the safety of the public, as to authorize or compel the courts to interfere for the protection of such persons.

*Jacobson v. Commonwealth of Massachusetts*, 197 US 11, 28, (1905).

Under ORS 401.168(1), however, during a state of emergency the Governor "has complete authority over all executive agencies of state government and *the right to exercise*, within the area designated by the proclamation, *all police powers vested in the state* by the Oregon Constitution in order to effectuate the purposes of this chapter." (Emphasis added)

This delegation of "all police powers of the state" necessarily goes too far in this case. "[A]n exercise of the police power of the state * * * is within the legitimate sphere of the legislative power." *Hofer v. Carson*, 102 Or 545, 548 (1922). By ceding all of the police powers to the Governor, the legislative power has been improperly delegated to the Governor because such police powers necessarily encompass matters within the legislature's power.

> Under our Constitution, article 4, § 1, the power to make and declare laws, subject only to the initiative and referendum powers reserved to the people, is vested exclusively in the legislative assembly, and by article 3, § 1, the powers of government are divided into three departments, namely, the legislative, the executive, including the administrative, and the judicial, and each of said departments is prohibited from exercising any of the powers conferred upon either of the others. *Under these provisions the Legislature cannot confer upon any person, officer, agency, or tribunal the power to determine what the law shall be.* (Emphasis added)

Page 13 –   PLAINTIFFS' MOTION FOR TEMPORARY
            RESTRAINING ORDER

*Van Winkle v. Fred Meyer, Inc.*, 151 Or 455, 461–62, 49 P2d 1140, 1143 (1935). ORS 401.168(1) is an unconstitutional delegation of legislative authority on its face.  It is the basis of EO 21-10.  Plaintiffs have shown likelihood of success on the merits of this claim.

Even if the law-making power is not delegated to (or usurped by) the Governor, the Governor has no authority outside of an emergency to suspend the laws of the state as provided in Article I section 22, *supra*. The governor has continued to suspend the education laws of the state after the emergency in the schools ended. That is impermissible.

     **5.**     **Plaintiffs are likely to suffer irreparable harm.**

In the public schools, there is a vast amount of public information that in-person education has been much more effective that on-line learning.[2]  Oregon Moms' members want their children to participate in in-person education at school for their emotional, social and educational well-being.  The children are harmed in ways that cannot be estimated by delay in their learning progress, emotional and social deprivation and scarring.  The impact on children should not be allowed to continue.

Parents have a protected right to direct their children's education.  *See Troxel, infra.* EO 21-06 interferes with that right in ways that have permanent impact on their children.  The interference is not rationally based on facts that support the governmental action.  Neither is EO 21-06 a legitimate exercise of the Defendant Governor's emergency powers.

Moreover, under any of the claims that the business Plaintiffs bring, there is a substantial risk of irreparable harm to Plaintiffs or to those whom they represent in this critical industry. The Ninth Circuit has recognized that the ***threat*** of putting Plaintiffs' constituents "out of

---

[2] This is not to say that private on-line schools are not as effective, but only that public schools have not yet duplicated the success of some private on-line schools.

Page 14 –   PLAINTIFFS' MOTION FOR TEMPORARY
                RESTRAINING ORDER

business" is a sufficient basis to establish irreparable harm. *See Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F.2d 1197, 1202-03 (9th Cir. 1980) ("Other than the threat of loss of revenues, the plaintiff did not demonstrate any threat of harm that would have supported a finding of irreparable injury. * * * [Plaintiff did not] contend or show that loss of the Raiders as a tenant threatened to put it or the Coliseum out of business."). *See Foremost Intern Torus, Inc. v. Qantas Airways Ltd.*, 379 F. Supp. 88, 97 (D.Haw. 1974), aff'd, 525 F.2d 281 (9th Cir. 1975), cert. denied, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976) ["The danger that Foremost will suffer irreparable injury before the CAB has investigated the charges of deceptive practices and unfair methods of competition is very real. Foremost has established ***that the existence of its business life*** as a competitor in the freewheeling tour market is threatened." (Emphasis added.)] *See also Retail Imaging Management Group, LLC v. Fujifilm North America Corp.*, 841 F.Supp.2d 1189, 1195 (D.Or. 2012) ("In conclusion, the threatened destruction of a business may, under certain circumstances, be sufficient to satisfy the requirement that a movant show a 'likelihood of irreparable injury.'"). Moreover, conduct that requires an organization to divert resources in disservice to its core mission "qualifies as sufficient irreparable harm." *Doe v. Trump*, 418 F. Supp. 3d 573, 599 (D. Or. 2019, Simon, J.).

Evidence of irreparable harm is present in the evidence before the Court. *See M. Adams Dec.* Ms. Adams has been forced by the effect Defendant's prior EO 20-03 to close eating and drinking establishments, one of which operated for years and one that was newly opened. *Id.* at ¶¶4-5. Her operating business, Spud Monkey's, is threatened with closure by the effect of 20-03 as continued by EO 21-10, and the Guidelines. *Id.* at ¶6.

**6.      The balance of equities tips in Plaintiffs' favor.**

As noted above, when the government is a party, the last two factors of the injunction

analysis merge. *Drakes Bay Oyster Co.*, 747 F.3d at 1092; *Index Newspapers LLC,* -- F.Supp. 3d --, 2020 WL 4883017, *26. Even so, there are important points to distinguish as to each factor. "Under the 'balance of equities' analysis, a court must 'balance the competing claims of injury' and 'consider the effect on each party of the granting or withholding of the requested relief.'" *Don't Shoot Portland v. City of Portland*, 465 F. Supp. 3d 1150, 1156 (D.Or., Hernandez, J.) (quoting *Winter*, 555 U.S. at 24, 129 S. Ct. 365 (internal quotation marks omitted)). If the alleged government action violates federal law, "the public interest factor generally weighs in favor of the plaintiff." *Doe*, 418 F. Supp. 3d at 599.

In the schools, the balance must favor the rights of parents to direct their children's education, and the right of children to receive a quality education. *See Troxel v. Granville*, 530 US 57, 65 (2000), citing *Meyer v. Nebraska*, 262 US 390, 399 (1923) ("the Due Process Clause includes the right of parents to * * * 'to control the education of their own.'") Public education has been legislatively defined as in-person, in-school education. ORS 339.010 and ORS 339.020, *supra*. The needs of children for a healthy emotional, social and educational experience must prevail. We have only one opportunity to raise each child—there are no second chances. And each child deserves an equal educational opportunity.

It goes without saying that the COVID-19 pandemic has impacted almost every sector of life for Oregonians. However, EO 21-10 inequitably shifts a disproportionate share of the burden onto the restaurant industry, Plaintiffs, and those whom Plaintiffs represent. As noted above, EO 21-10, does not treat eating and dining establishments equally in terms of food and beverage services even if they offer substantially similar services.

Simply put, the burden that EO 21-10 places on Plaintiffs and their members is disproportionately high such that the enforcement of this Order should be temporarily restrained.

Page 16 –   PLAINTIFFS' MOTION FOR TEMPORARY
            RESTRAINING ORDER

**7.    A TRO and Preliminary Injunction are in the public's best interests.**

"The public interest inquiry primarily addresses impact on non-parties rather than parties." *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014) (internal quotation marks omitted).  As was discussed in another case within this District, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Index Newspapers LLC*, 2020 WL 4883017, at *26 (Quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quotation marks omitted) (granting an injunction under the Fourth Amendment)).

Plaintiffs here have plead several claims that pertain to their rights under the Constitution, including claims for violations of due process, equal protection, and claims under Oregon law. Preventing these continued violations imposed by EO 21-06 and EO 21-10 on not only Plaintiffs, but all those similarly situated to Plaintiffs, and indeed the general public in Oregon as a whole, are in the public's best interest.  This is particularly so where the reasons for the restrictions are not supported by a rational basis.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Page 17 –    PLAINTIFFS' MOTION FOR TEMPORARY
             RESTRAINING ORDER

## CONCLUSION

Plaintiffs request the Court issue a temporary restraining order and an order requiring Defendant to appear and show cause why a preliminary injunction should not issue.

DATED this 5th day of May 2021.

        JORDAN RAMIS PC

        By: *s/ Edward H. Trompke*
            Edward H. Trompke, OSB #843653
            ed.trompke@jordanramis.com
            Christopher K. Dolan, OSB #922821
            chris.dolan@jordanramis.com
            Two Centerpointe Dr 6th Flr
            Lake Oswego OR 97035
            Telephone:  (503) 598-7070
            Telephone: (503) 598-7070
            Facsimile: (503) 598-7373

            *Attorneys for Plaintiffs Oregon Moms Union; Melissa Adams; Spud Monkey's Inc., an assumed business name of Water Hole No. 2 Saloon, Inc.; and Heart of Main Street*

### CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under L.R. 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 4,925 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

DATED this 5th day of May 2021.

JORDAN RAMIS PC

By: *s/ Edward H. Trompke*
Edward H. Trompke, OSB #843653
ed.trompke@jordanramis.com
Christopher K. Dolan, OSB #922821
chris.dolan@jordanramis.com
Two Centerpointe Dr 6th Flr
Lake Oswego OR 97035
Telephone: (503) 598-7070
Telephone: (503) 598-7070
Facsimile: (503) 598-7373

*Attorneys for Plaintiffs Oregon Moms Union; Melissa Adams; Spud Monkey's Inc., an assumed business name of Water Hole No. 2 Saloon, Inc.; and Heart of Main Street*

# CERTIFICATE OF SERVICE

I hereby certify that on the date shown below, I served a true and correct copy of the foregoing PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER on:

Marc Abrams, OSB #890149
Sheila H. Potter, OSB #993485
Oregon Department of Justice
100 SW Market St
Portland OR  97201
Phone: 971-673-1880
marc.abrams@state.or.us
sheila.potter@doj.state.or.us

*Of Attorneys for Defendant Katherine "Kate"*
*Brown, in her official capacity as the Governor*
*of the State of Oregon*


☒     by electronic transmission and first class mail, postage prepaid.

DATED:  May 5, 2021.

*s/ Edward H. Trompke*
Edward H. Trompke, OSB #843653
ed.trompke@jordanramis.com
Christopher K. Dolan, OSB #922821
chris.dolan@jordanramis.com
Attorneys for Plaintiffs Oregon Moms Union; Melissa Adams; Spud Monkey's Inc., an assumed business name of Water Hole No. 2 Saloon, Inc.; and Heart of Main Street

Page 1 –     CERTIFICATE OF SERVICE